## Donk Bros. Coal & Coke Company v. Martha E. Sapp, by next friend.

1. Statute of Limitations—*governing action arising under Mines and Miners Act.* The right of action given by the Mines and Miners Act to the widow, etc., of a person killed through the wilful violation of such act is governed by the general law in regard to the limitation of actions.

2. Mines and Miners Act—*section 2 construed.* The Legislature by section 2 of the Mines and Miners Act intended that the lower

landing at the top of every mine shaft should be securely fenced with automatic gates or some other kind of gates not automatic, and that such gates when so used whether automatic or non-automatic, would fulfil the requirements of the statute.

Action to recover damages for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison County; the Hon. JAMES E. DUNNEGAN, Judge, presiding. Heard in this court at the February term, 1906. Reversed and remanded. Opinion filed September 14, 1906. Rehearing denied February 26, 1907.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

RAMSEY & HAMLIN and BURTON & WHEELER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action to recover damages for the death of John M. Sapp, which occurred April 11, 1904, and is alleged to have been caused by the negligence of appellant. The suit was commenced by Elmer Sapp, administrator of the estate of John M. Sapp, deceased, as plaintiff. The *præcipe* for summons was filed March 27, 1905, and the summons issued and delivered to the sheriff upon the same day. On May 9, 1905, the *præcipe* and summons were amended by substituting as plaintiff "Martha E. Sapp, by Elmer Sapp, her next friend" in place of the former plaintiff and by reducing the amount of damages claimed from $10,000 to $5,000, and on the same day a declaration was filed which conformed to the changes made. The effect of the amendment was to change the suit from one brought by the personal representatives for the benefit of the widow and next of kin under chapter 70 of the Revised Statutes, known as the "Injuries Act," to one brought by the wife, an insane person, by her next friend for damages accruing to her under chapter 93 of the Revised Statutes relating to "Mines and Miners."

The declaration upon which the case was tried, consisted of one count which charged that appellant possessed and operated a coal mine in Madison county, Illinois, with a shaft

in which it operated cages for carrying men and material to and from the bottom of the shaft; that deceased was employed to work on the surface of the ground at or near the lower landing at the top of the shaft and at the time he was injured, was engaged in the line of his duty in loading mine props and timbers into a car and pushing the car onto the cage in the shaft; that it was the duty of appellant "by virtue of the statute to securely fence and maintain the lower landing at the top of the shaft of said coal mine, with automatic or other gates, similar in character and affording equal protection, so as to prevent either men or materials from falling into the shaft"; that appellant wilfully and wantonly failed and neglected to perform its duty in that regard and insecurely fenced and maintained said lower landing with gates hung upon hinges on one side and fastened or unfastened at the other with hook or staple and that said gates were wholly unautomatic and required the attendance of some person to fasten or unfasten and open or close the same; that by reason of said wilful and wanton failure and neglect on the part of appellant, one of said gates became unfastened and open while the cage was at the bottom of the shaft and deceased while engaged in the performance of his duty, pushed a car loaded with mine props and timbers to the lower landing aforesaid, and by reason of said gate being open, fell into the shaft and received injuries which occasioned his death. A plea of the general issue and a special plea of the Statute of Limitations were filed. The court sustained a demurrer to the special plea, and appellant, having abided by its plea, went to trial on the general issue.

The trial resulted in a judgment in favor of appellee for $5,000, to review which appellant brings the case to this court.

Appellant complains that the court below erred in sustaining a demurrer to its plea of the Statute of Limitations, in excluding certain evidence offered by appellant, and in giving certain instructions for appellee.

Appellant's special plea setting up the Statute of Limita-

tions, was based upon the theory that the amendments to the *præcipe* and summons, set up a new and distinct cause of action from that contemplated by the original *præcipe* and summons and notwithstanding the fact that the originals were filed within one year, yet as the amendment was made after the expiration of one year from the time the action accrued, it was barred by the statute in relation to "Injuries," which provides that such actions shall be commenced within one year after the death of the person injured.    We are of opinion the demurrer was properly sustained for the reason that after the amendment, the case proceeded under the act in relation to "Mines and Miners," which gives a right of action to the widow (and certain other persons named) of a person killed for a wilful violation of that act or the wilful failure to comply with any of its provisions, but this act makes no provision for limiting the time within which such action shall be brought, and must be controlled by the general laws governing the limitation of personal actions and not by the one-year limitation law of the "Injuries Act."    Under the general law in regard to limitations the action was not barred and consequently the plea was not good.

The evidence introduced by appellee on the trial, showed that the opening at the lower landing at the surface of the ground was fenced with a gate, which fastened with a hook and staple; that such gate was not an automatic gate which would close itself after being open; that deceased, John M. Sapp, had sole charge of this gate and it was his duty to open and close it and to keep it closed when the cage was not at the surface landing; that shortly before he was injured he opened the gate to its full width, let a man on the cage and gave a signal to lower the same; that after the cage was lowered he neglected to close the gate and proceeded to load a mine car with some props; that he then, with the help of another man, pushed the car through the open gate into the shaft and fell with it to the bottom of the mine.    No evidence was introduced on the part of appellant, but it offered to prove by Thomas Cunningham, the mine inspector of

Madison county, that the gate in question used by appellant "is a practical gate and safest gate that he knows of that could be operated at the surface landing"; and also to próve by some five witnesses of experience in the coal mining business, including Cunningham, that the gate in question "is a practical gate and employed and used in all of the mines of the State of Illinois so far as they have observed." The court, however, upon the objection of appellee, refused to admit such evidence.

The court instructed the jury on behalf of plaintiff, that the law makes it the duty of every owner and operator of a coal mine, to securely fence the lower landing at the top of the shaft of said mine with automatic or other gates, similar in character and affording equal protection, so as to prevent men or material from falling into such shaft, and that a wilful failure on the part of the owner or operator to comply with such requirement of the law, would make him liable in damages to the widow of a person killed by reason of such failure; also that the negligence of deceased in failing to shut the gate after sending the cage down the shaft was no defense to the action if the jury believed from a preponderance of the evidence "that the defendant wilfully failed to securely fence the lower landing at the top of the shaft with automatic or other gates, similar in character and affording equal protection, so as to prevent men and material from falling into the shaft, and that such failure occasioned the death of said John M. Sapp."

The decision of this case involves the interpretation to be given to certain words in section two of the act relating to "Mines and Miners." One paragraph of that section provides that "the upper and lower landings, at the top of each shaft and the opening of each intermediate seam from or to the shaft, shall be kept clear and free from loose materials and shall be securely fenced with automatic or *other gates,* so as to prevent either men or materials from falling into the shaft." Appellee in setting forth the duty of appellant in her declaration, instead of using the words "automatic or other gates" as used by the statute, declared it to be

appellant's duty to securely fence the lower landing of the shaft with "automatic gates or *other gates similar in character and affording equal protection,* so as to prevent either men or material from falling into the shaft of said coal mine"; and the court in its instructions, as above set forth, adopted appellee's theory as set out in her declaration, and told the jury that it was the duty of the mine owner to fence the lower landing with "automatic or *other gates, similar in character and affording equal protection."* It is appellee's theory that the gate required by the statute, must be an automatic gate or at least that it must be automatic to the extent that when open it would not remain open but would close and fasten itself and this appears to have been the theory upon which the case was tried in the court below.

The language used in the declaration and in the instructions, is not the language of the statute, but adds to it very material words. It is insisted however by appellee that the maxim *ejusdem generis,* that is, the rule of legal construction which provides that general words following an enumeration of particulars are to have their generality limited by reference to the preceding particular enumeration and to be construed as including only all other articles of the like nature and quality, should be applied in the construction of this statute and that when this maxim is applied, the meaning of the statute will be found to be that given it by the declaration and instructions; that the word "other" used in the statute, is restricted in sense by the particular word "automatic" which it follows and therefore the Legislature intended that all gates used for the purpose named, should be in a manner automatic, that is automatic at least to the extent of closing and fastening themselves without assistance after having been open. On the contrary, appellant insists that the word other is used in its ordinary sense and means something different from that which has been specified and that in this case the expression "automatic or other gates" means automatic gates or gates different from automatic; that the words "other gates," as used, cannot be construed to mean automatic gates.

7

In the case of Gage v. Cameron, 212 Ill., 146, the doctrine of *ejusdem generis* is discussed at length and it is there said in the course of the opinion: "The rule that where an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as those specified, is only one of the many rules of construction which are employed for the purpose of ascertaining the intention of the Legislature, or of the contracting parties, as expressed in a statute or contract sought to be construed; 'and where from the whole instrument a larger intent may be gathered, the rule under consideration will not be applied in such manner as to defeat such larger intent,' or the rule will not be applied where from the whole statute or contract a larger intent may be gathered, if the application of the rule will operate to defeat such larger intent. * * * 'The restriction of general words to things *ejusdem generis* must not be carried to such an excess as to deprive them of all meaning. The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing, which can be called *ejusdem generis*. If the particular words exhaust a whole *genus,* the general words must refer to some larger class' * * * The maxim *ejusdem generis* 'must yield to another equally salutary rule of construction, viz., that every part of a statute should, if possible, be upheld and given its appropriate force.' * * * 'Every clause and even every word should, when possible, have assigned to it some meaning.' " See also Swift & Company v. Rennard, 119 Ill. App., 173 (178).

We are of opinion that when the Legislature used the words "automatic gates" without restriction, it must have intended to include all automatic gates and the term was exhaustive of that particular kind of gates and to hold that the words "other gates" following "automatic gates" were intended to read "or other automatic gates," would in our opinion be a forced construction of the statute which the words actually used do not warrant. If the maxim *ejusdem generis* should be strictly applied to this statute, the words "other gates" would be meaningless and of no effect.

We conclude that by the language used the Legislature intended that the lower landing at the top of every mine shaft, should be securely fenced with automatic gates or some other kind of gates not automatic, and that such gates when so used, whether automatic or non-automatic, would fulfil the requirements of the statute, if they were reasonably adapted for the purpose for which they were required, that is "to prevent either men or materials from falling into the shaft."

Holding the views above expressed, we are of opinion that the court below erred in refusing to admit the testimony proffered by appellant and also in giving the instructions above offered on behalf of appellee.

The judgment of the court below will accordingly be reversed and the cause remanded.

*Reversed and remanded.*